UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARY ANNE SPIEZIO, *as Administratrix of*
*the Estate of* ROBERT AMRHEIN,

                Plaintiff,

      -against-                         1:21-CV-1254 (LEK/ML)

DARLENE MARTINEZ,

                Defendant.

---

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

This action concerns the death of Robert Amrhein ("Plaintiff-Decedent"), who died in a car accident while in custody of the New York State Office for People with Developmental Disabilities ("OPWDD"). Dkt. No. 25 ¶¶ 6–8 ("Amended Complaint"). Plaintiff Mary Anne Spiezio ("Plaintiff") brought this action on behalf of Plaintiff-Decedent's estate against Defendant Darlene Martinez. Id. ¶ 4. Plaintiff alleges Defendant was an employee of the OPWDD. Id. ¶¶ 5–6. Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 27 ("Motion to Dismiss"). Plaintiff filed a response opposing Defendant's Motion to Dismiss. Dkt. No. 32 at 9 ("Response"). Defendant filed a reply. Dkt. No. 34 ("Reply"). For the reasons that follow, the Court denies Defendant's Motion to Dismiss.

## II.    BACKGROUND

On June 28, 2022, Plaintiff filed a motion for leave to file an Amended Complaint after making a request to OPWDD pursuant to New York State law, under Jonathan's Law,[1] to provide the investigatory records of the New York State Justice Center and the final Accident Report of the Rensselaer County Sherriff's Department. Dkt No. 20-1 ¶ 5 ("Plaintiff's Affirmation in Support of Motion to Amend"). The Honorable Miroslav Lovric, United States Magistrate Judge, granted the motion to amend on June 28, 2022. Dkt. No. 24. The Amended Complaint brings claims against Defendant pursuant to 42 U.S.C. § 1983 ("Section 1983") under the Fourteenth Amendment Due Process Clause for: (1) deliberate indifference to bodily integrity and failure to provide for the safety of an institutionalized individual; (2) deliberate indifference to the medical needs of an institutionalized individual; (3) violations of Plaintiff-Decedent's substantive Due Process rights pursuant to a "special relationship" theory or a "state-created-danger" theory of liability; and (4) a supplemental State law claim for automobile negligence. Id. ¶¶ 32–54.[2]

---

[1] "'Jonathan's Law' [is] a New York statute that entitles legal guardians to all medical records and abuse investigation records." D.K. v. Teams, 260 F. Supp. 3d 334, 348 n.4 (S.D.N.Y. 2017); see, e.g., New York State Mental Hygiene Law §§ 33.23, 33.25.

[2] In addition to the Amended Complaint, Plaintiff filed a notice of claim against the State of New York "in which the State of New York is the sole defendant," and that separate case is currently pending in the New York State Court of Claims. Resp. at 1.

### A. Plaintiff's Recitation of the Facts[3]

On June 9, 2020, Plaintiff-Decedent, a resident of an OPWDD Group Home in Cambridge, New York, was transported by Defendant from his group home to a medical appointment in Albany, New York. Am. Compl. ¶ 6. Plaintiff alleges that Defendant was acting "pursuant to her job duties as an employee of OPWDD." Id. ¶ 6.[4] Plaintiff-Decedent was involuntarily committed to the custody of OPWDD due to his severe developmental disabilities. Id. ¶ 11. Defendant drove Plaintiff-Decedent in a Chevrolet passenger van owned by OPWDD, pursuant to her job as an employee of OPWDD. Id. ¶ 6. While in transport, in the southbound lane of State Route 40 in the Town of Schaghticoke, New York, Defendant "swerved off of the road to the right, colliding with a grove of trees." Id. ¶ 7. "[T]he brunt of the accident was borne by the passenger side of the vehicle, where [Plaintiff-Decedent] Robert Amrhein was sitting in the front seat." Id. Plaintiff states: "Martinez claims that she s[w]erved the vehicle to avoid a ground hog in the roadway." Id. ¶ 9. Plaintiff's Amended Complaint included "several snapshots of the video of the accident, captured on the camera of a business on Route 40 . . . ." Id.

According to Plaintiff, Defendant violated OPWDD's "strict policies and procedures" for transportation of its residents by putting Plaintiff-Decedent in the front seat, rather than the back seat of the vehicle as required by OPWDD. Id. ¶ 12. Plaintiff asserts that Plaintiff-Decedent "would most likely not have been seriously harmed had he been restrained in the back seat" and the Amended Complaint included a photograph allegedly showing the severe damage to the

---

[3] Defendant stated that for the purposes of the Motion to Dismiss, Defendant assumes Plaintiff's facts alleged in the Amended Complaint, but Defendant's "recitation of the allegations in the Amended Complaint for the purpose of the instant motion does not constitute an admission that any allegation is true." Mot. to Dismiss at 1 n.1.

[4] According to Plaintiff, Defendant has since been terminated from her employment with OPWDD. Am. Compl. ¶ 5.

front, right-hand passenger's seat of the Chevrolet van, where Plaintiff-Decedent was allegedly sitting. Id. ¶ 12.

Plaintiff further alleges that Defendant was under the influence of prescriptions Adderall and Xanax and that this is "confirmed by bloodwork taken by the Rensselaer County Sheriff's Department." Id. ¶ 15. Additionally, Plaintiff states that "Adderall was found in [Defendant's] purse on June 9, 2020, with a prescription being made out to her." Id. ¶ 15. Defendant allegedly denied the use of Adderall to the Rensselaer County Sheriff's Department and investigators from the New York State Justice Center. Id. ¶ 22. In the Amended Complaint, Plaintiff also asserts that on April 29, 2022, an unnamed eyewitness to the Defendant's conduct testified in a deposition before Plaintiff's counsel that Defendant "appeared to be under the influence of Adderall, given her nervous behavior, and constantly repeating of words and phrases . . . ." Id. at ¶ 19.

Moreover, Plaintiff states that Defendant "was driving the transport van in a reckless manner and at an unsafe rate of speed, in addition to falling asleep because of her use of prescription medications." Id. at ¶ 14. According the Amended Complaint, on May 2, 2022, another unnamed eyewitness was deposed by Plaintiff's counsel and testified that Defendant's "operation of the transport van on June 9, 2020[,] was consistent with someone who had fallen asleep at the wheel. Id. at ¶ 20.

Following the crash, Defendant was "largely unharmed," but Plaintiff-Decedent "was pinned in his seat for several minutes until he died." Id. ¶¶ 7–8. Plaintiff alleges that Plaintiff-Decedent "was conscious for a period of time after the accident" and that Plaintiff-Decedent "died an agonizing . . . death, having suffered from severe internal injuries." Id. ¶ 8. According to Plaintiff, Defendant made no effort to provide first aid to Plaintiff-Decedent. Id. at ¶ 26. Plaintiff

4

states that ultimately Defendant "pled guilty to a violation of New York State's Vehicle and Traffic Law" and "had her license suspended for causing a fatal car accident." Id. at ¶ 24.

Plaintiff alleges that Defendant's "conduct goes beyond negligence . . . as she was clearly and deliberately indifferent to Robert Amrhein's constitutional rights given the grossly negligent and reckless manner in which she conducted herself on June 9, 2020." Id. at ¶ 10.

## III.   LEGAL STANDARD

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

Under Federal Rule of Civil Procedure 12(b), "a party may assert the following [defense] by motion: . . . (6) failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss for failure to state a claim, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). This plausibility standard, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678

(quoting <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555). The Supreme Court has stated that while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). In the context of a Rule 12(b)(6) motion, the Court "construe[s] plaintiffs' complaint liberally, 'accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiffs' favor.'" <u>Holmes v. Grubman</u>, 568 F.3d 329, 335 (2d Cir. 2009) (quoting <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 124 (2d Cir. 2008)).

## IV.   DISCUSSION

### A.  Request to Exclude Darlene Martinez's Deposition Transcript

In her Reply, Defendant requested the exclusion of a deposition transcript of Darlene Martinez used in a separate state law action, which was filed in Plaintiff's Response to the Motion to Dismiss. Reply at 1–3; Dkt. No. 32-1. Defendant argues that "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." <u>Id.</u> at 1. In addition, Defendant argues that "'the court cannot consider matters outside the pleadings, such as a deposition transcript [from another action].'" <u>Id.</u> at 2 (quoting <u>Iannuzzi v. Washington Bank</u>, No. 07-CV-964, 2008 U.S. Dist. LEXIS 65541, at *18 n.2 (E.D.N.Y. Aug. 21, 2008)).

When "'matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint

alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (quoting Fonte v. Board of Managers of Continental Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988)). The conversion of a Motion to Dismiss under Rule 12(b)(6) to summary judgment under Rule 56, "is strictly enforced whenever there is a 'legitimate possibility' that the district court relied on material outside the complaint in ruling on the motion." Friedl, 210 F.3d at 83 (quoting Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999)). This could occur if the Court, "'makes a connection not established by the complaint alone' or contains an 'unexplained reference' that 'raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion.'" Friedl, 210 F.3d at 83–84 (quoting Fonte, 848 F.2d at 25).

Here, Plaintiff's Response appended the transcript of a deposition of Defendant. Dkt. No. 32-1. In Kopec v. Coughlin, the Second Circuit held that, "since the district court considered affidavits and exhibits submitted by [a defendant] in granting the motion to dismiss, it erred in failing to convert the motion to one for summary judgment." Kopec v. Coughlin, 922 F.2d 152, 155 (2d Cir. 1991). In this case, the Court will exclude the deposition attached by Plaintiff as an exhibit to her Response, and will decide the Motion to Dismiss on the basis of the Amended Complaint alone. See Global Network Commc'ns., Inc. v. City of N.Y., 458 F.3d 150, 156 (2d Cir. 2006) ("[W]e agree with appellant that the district court committed reversible error when, in ruling that the complaint failed to state a claim for which relief could be granted, it considered matters outside plaintiff's complaint.").

**B. Deliberate Indifference to the Right of Bodily Integrity of an Institutionalized Individual and Failure to Provide for the Safety of an Institutionalized Individual**

"As a general matter, a State is under no constitutional duty to provide substantive services for those within its border." Youngberg v. Romeo, 457 U.S. 307, 317 (1982). However, "[w]hen a person is institutionalized—and wholly dependent on the State— . . . a duty to provide certain services and care does exist, although even then a State necessarily has considerable discretion in determining the nature and scope of its responsibilities." Id. Accordingly, in Youngberg, the Supreme Court found that developmentally disabled people who are involuntarily committed are entitled to substantive Due Process rights under the Fourteenth Amendment. See id. at 314 (addressing "the substantive rights of involuntarily committed mentally [disabled] persons under the Fourteenth Amendment to the Constitution"). The Supreme Court stated that "the mere fact that [a developmentally disabled person] has been committed under proper procedures does not deprive him of all substantive liberty interests under the Fourteenth Amendment." Id. at 315. The Fourteenth Amendment states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

The Supreme Court stated in Youngberg, first, that "the right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause." 457 U.S. at 315. Accordingly, Youngberg explained that the "right is not extinguished by lawful confinement, even for penal purposes." Id. at 315. Therefore, "[i]f it is cruel and unusual punishment [under the Eighth Amendment] to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Fourteenth Amendment] to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." Id. at 315–316.

8

Second, <u>Youngberg</u> stated that "'[liberty] from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action[,]'" <u>id.</u> at 316 (quoting <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1, 18 (1979) (Powell, J., concurring in part and dissenting in part)), and that this liberty interest "must also survive involuntary commitment." <u>Youngberg</u>, 457 U.S. at 316; <u>see also</u> <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720 (1997) (observing that the Supreme Court has "held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right[] . . . to bodily integrity . . . ." (citing <u>Rochin v. California</u>, 342 U.S. 165 (1952))).

Thus, involuntarily committed developmentally disabled people have a liberty interest (1) in safe conditions and (2) in freedom from bodily restraint under the Fourteenth Amendment to the Constitution. <u>See</u> <u>Youngberg</u>, 457 U.S. at 315–316; <u>see also</u> <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 200 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—<u>e.g.</u>, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.").

Defendant's Motion to Dismiss and Reply largely focus on Plaintiff's claim with regarding the right to bodily integrity, rather than Plaintiff's claim regarding the right to reasonable safety. Mot. to Dismiss at 7–12; Reply at 3–5. However, because Defendant's Motion to Dismiss repeatedly refers to the standard under which substantive Due Process Claims should be assessed—arguing that the "shocks the conscience" standard should apply in this case—and because the standard for Fourteenth Amendment bodily integrity and safety claims brought by

involuntarily committed mentally disabled people are the same, the Court will address

Defendant's argument as it relates to both claims.

As a threshold matter, the Court must determine whether it should apply the professional

judgment standard, the deliberate indifference standard, or the shocks the conscience standard to

Plaintiff's Fourteenth Amendment Due Process bodily integrity and reasonable safety claims.

Youngberg set forth the professional judgment standard. The Supreme Court in

Youngberg agreed with the concurring opinion of Chief Judge Collins Seitz of the Third Circuit

in the underlying Third Circuit decision at issue in Youngberg:

> We think the standard articulated by Chief Judge Seitz affords the
> necessary guidance and reflects the proper balance between the
> legitimate interests of the State and the rights of the involuntarily
> committed to reasonable conditions of safety and freedom from
> unreasonable restraints. He would have held that "the Constitution
> only requires that the courts make certain that professional judgment
> in fact was exercised. It is not appropriate for the courts to specify
> which of several professionally acceptable choices should have been
> made."

457 U.S. at 321 (quoting Romeo v. Youngberg, 644 F.2d 147, 178 (3rd Cir. 1980) (Seitz, C.J.,

concurring)). Youngberg stated that, in the context of constitutional claims brought by

involuntarily committed developmentally disabled individuals, "the decision, if made by a

professional, is presumptively valid; liability may be imposed only when the decision by the

professional is such a substantial departure from accepted professional judgment, practice, or

standards as to demonstrate that the person responsible actually did not base the decision on such

a judgment." Youngberg, 457 U.S. at 323 (footnotes omitted).[5] In Youngberg, the Supreme

Court defined "professional" for the purposes of the professional judgment standard:

---

[5] For this reason, the professional judgment standard is sometimes referred to as the "substantial
departure" test, because "the [Supreme] Court [in Youngberg] held that only an official's
decision that was a 'substantial departure from accepted professional judgment, practice, or

10

> By "professional" decisionmaker, we mean a person competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the [developmentally disabled].

457 U.S. at 323 n.30. Following the reasoning of Youngberg, "[t]he Second Circuit has applied the professional judgment standard to substantive due process violations under the Fourteenth Amendment alleged by involuntarily committed persons against professionals." O'Dell v. Bill, No. 13-CV-01275, 2014 U.S. Dist. LEXIS 182152, at *15 (N.D.N.Y. Nov. 25, 2014) (citing Olivier v. Robert L. Yeager Mental Health Ctr., 398 F.3d 183, 188–89 (2d Cir. 2005), report and recommendation adopted in 2015 U.S. Dist. LEXIS 18951 (N.D.N.Y. Feb. 18, 2015). The professional judgment "standard requires more than simple negligence on the part of the doctor but less than [Eighth Amendment] deliberate indifference." Kulak v. City of New York, 88 F.3d 63, 75 (2d Cir. 1996) (citing Est. of Porter by Nelson v. Illinois, 36 F.3d 684, 688 (7th Cir. 1994) and Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1143, 1144–47 (3rd Cir. 1990)).

"However, the Second Circuit has not articulated whether to apply this [professional judgment] standard to substantive due process violations under the Fourteenth Amendment alleged by involuntarily committed patients *against non-professionals*." O'Dell, 2014 U.S. Dist. LEXIS 182152, at *16 (emphasis in original); see also Brooks v. Hogan, No. 15-CV-00090, 2020 U.S. Dist. LEXIS 74131, at *50–51 (N.D.N.Y. Apr. 20, 2020) ("While the Second Circuit has applied the professional judgment standard to claims of substantive due process violations brought by involuntarily committed individuals against professionals, it has not specified which

---

standards' would support a substantive due process claim brought by an involuntarily committed mental patient." See Vallen v. Carrol, No. 02-CV-5666, 2005 U.S. Dist. LEXIS 20840, at *25–26 (S.D.N.Y. Sept. 20, 2005) (quoting Youngberg, 457 U.S. at 323).

standard to apply to such claims brought against 'non-professionals.'"), <u>report and
recommendation adopted in</u> 2020 U.S. Dist. LEXIS 95239 (N.D.N.Y. June 1, 2020).

The district court in <u>Vallen v. Carrol</u> observed that in <u>Youngberg</u> "[i]n defining its use of
the term 'professional,' the [Supreme] Court appeared to include non-professionals acting under
the direction of professional supervisors[,]" <u>Vallen</u>, 2005 U.S. Dist. LEXIS 20840, at *26 (citing
<u>Youngberg</u>, 457 U.S. at 323 n.30), but the <u>Vallen</u> court found that the professional judgment
standard was inapplicable to low-level, non-professional staff members:

> Unlike the defendants in <u>Youngberg</u>, the defendants here are low-
> level staff members. The nature of such an employee immediately
> addressing patient-on-patient assault or theft differs significantly
> from higher-level decisions like patient placement and the adequacy
> of supervision. For the latter decisions, it is readily possible to apply
> a test based on professional judgment, practice or standards. In this
> case, professionals made none of the challenged decisions, and thus
> the "substantial departure" test has no applicability.

2005 U.S. Dist. LEXIS 20840, at *26. When addressing Fourteenth Amendment claims brought
by involuntarily committed mentally disabled patients with regard to decisions made by non-
professional staff members, courts in this Circuit have regularly applied a deliberate indifference
standard. <u>See, e.g.,</u> <u>O'Dell</u>, 2014 U.S. Dist. LEXIS 182152, at *17–18 ("I am inclined to . . .
apply the deliberate indifference standard to a substantive due process violation under the
Fourteenth Amendment alleged by an involuntarily committed patient against a non-
professional."); <u>Brooks</u>, 2020 U.S. Dist. LEXIS 74131, at *51 (stating that, in the context of
claims brought by an involuntarily committed individual, "[w]hen a decision made by a 'non-
professional' is at issue, this Court is inclined to apply the deliberate indifference standard.");
<u>Vallen</u>, 2005 U.S. Dist. LEXIS 20840, at *29 ("I am inclined to agree with the Eighth Circuit
that the standard of 'deliberate indifference' is the correct one for Section 1983 claims brought
by involuntarily committed mental patients and based on alleged failures to protect them that

12

violated their substantive due process rights." (citing <u>Moore v. Briggs</u>, 381 F.3d 771, 773 (8th Cir. 2004))).

In this case, there is no indication that Defendant had the education or training to be considered a "professional" as defined by <u>Youngberg</u>, <u>see</u> 457 U.S. at 323 n.30, nor does Defendant offer arguments regarding whether the professional judgment standard should apply. <u>See generally</u> Mot. to Dismiss; Reply. Even assuming, arguendo, that Defendant had raised such an argument, the Court would find that Plaintiff has alleged facts showing that the professional judgment standard would be inapposite in this case.[6]

Defendant argues that the "shock[s] the contemporary conscience" standard should be applied here. Mot. to Dismiss at 8 (citation omitted); <u>see also</u> Reply at 3. The Court agrees, with the caveat that the deliberate indifference standard is sufficient to shock the conscience in this case, for reasons the Court will now explain.

---

[6] Plaintiff has alleged: "Upon information and belief, the OPWDD has strict policies and procedures about the transport of its residents."). Am. Compl. ¶ 12. According to Plaintiff, OPWDD created a strict policy to transport the involuntary committed residents in the back seat, rather than the front seat: "These policies require a resident to be transported in the back seat of a car or other vehicle, and to be restrained with a seat belt. These policies are obviously for the safety of the resident, as most OPWDD residents are transported in large vans, and are far safer in the rear seats of a van th[a]n they are in the front seat. That safety issue was especially pronounced here, because Robert Amrhein would most likely not have been seriously harmed had he been restrained in the back seat . . . ." <u>Id.</u> Assuming, for the sake of argument, that the Court could construe this regulation as a policy had been developed by higher-level professionals, the Court would find that, pursuant to <u>Youngberg</u>, Plaintiff has pled facts showing that Defendant's actions substantially departing from the accepted judgment, practice or standards of this OPWDD policy. <u>See Youngberg</u>, 457 U.S. at 323. Accordingly, Plaintiff's allegations against Defendant would survive the Motion to Dismiss under the professional judgment standard. The Court notes, however, that it appears Defendant is a low-level, non-professional employee, so it is most likely that the professional judgment standard does not apply here. <u>See Vallen</u>, 2005 U.S. Dist. LEXIS 20840, at *26 ("In this case, professionals made none of the challenged decisions, and thus the 'substantial departure' test has no applicability.").

In an action addressing the Fourteenth Amendment substantive Due Process rights of pretrial detainees, the Second Circuit has stated: "'In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Charles v. Orange Cnty., 925 F.3d 73, 85 (2d Cir. 2019) (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)). However, "[t]he Supreme Court has held that the point of conscience shocking is reached when governmental actors are deliberately indifferent to the medical needs of pretrial detainees." Charles, 925 F.3d at 86. "In this particular context, 'deliberately indifferent conduct' is 'egregious enough to state a substantive due process claim.'" Id. (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Accordingly, "[a] court need not, therefore, conduct a separate analysis, over and above the deliberate indifferent analysis of, whether the state's conduct 'shocks the conscience.'" Charles, 925 F.3d at 86.

Charles addressed the Fourteenth Amendment Due Process rights of pretrial detainees with mental illnesses, which are analogous to the Fourteenth Amendment Due Process rights of involuntarily committed persons. Indeed, the justification for applying the Fourteenth Amendment Due Process Clause to claims brought by involuntarily committed developmentally disabled people in Youngberg is the same as the justification for applying the Fourteenth Amendment Due Process Clause to claims brought by pretrial detainees in the Second Circuit case of Darnell v. Pineiro, 849 F.3d 29 (2d Cir. 2017) and its Supreme Court progenitor, Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015). Involuntarily committed developmentally disabled people and pretrial detainees may not be punished in any manner. See Youngberg, 457 U.S. at 315–16 ("If it is cruel and unusual punishment to hold convicted criminals in unsafe

14

conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions."); Darnell, 849 F.3d at 29 ("A pretrial detainee's claims are evaluated under the Due Process Clause because, '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" (internal quotations omitted) (quoting Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007), rev'd on other grounds sub nom. Iqbal, 556 U.S. at 678)); Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015) (stating with regard to "claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause" that "most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, must less 'maliciously and sadistically.'" (quoting Ingraham v. Wright, 430 U.S. 651, 671–72 n.40 (1977))). Thus, when an involuntarily committed developmentally disabled person brings a claim against a non-professional for violations of the plaintiff's Fourteenth Amendment Due Process rights, courts should apply the deliberate indifference standard, see Brooks, 2020 U.S. Dist. LEXIS 74131, at *51; O'Dell, 2014 U.S. Dist. LEXIS 182152, at *17–18; Vallen, 2005 U.S. Dist. LEXIS 20840, at *29, and this deliberate indifference standard is sufficient to meet the shocks the conscience standard in this context, see Charles, 925 F.3d at 86.[7]

---

[7] "The concept of deliberate indifference has a more complicated history in this Circuit." Charles, 925 F.3d at 86. Rights under the Due Process Clause of the Fourteenth Amendment are "'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" Darnell, 849 F.3d at 29 (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). However, deliberate indifference in the Fourteenth Amendment context is not synonymous with deliberate indifference in the Eighth Amendment context. "Following the Supreme Court's analysis in Kingsley, there is no basis for the reasoning in Caiozzo [v. Koreman, 581 F.3d 63 (2d Cir. 2009)] that the subjective intent requirement for deliberate indifference claims under the Eighth Amendment, as articulated in Farmer [v. Brennan, 511 U.S. 825, 842 (1994)], must apply to deliberate indifference claims under the Fourteenth Amendment. Caiozzo is thus overruled to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment." Darnell, 849 F.3d at 34–35. Vallen was issued in 2005, before the Second Circuit issued the now overruled Caiozzo decision,

In <u>Darnell</u>, the Second Circuit defined the two prongs a plaintiff-pretrial-detainee must satisfy to bring a deliberate indifference claim pursuant to the Due Process Clause of the Fourteenth Amendment:

> [A] pretrial detainee must satisfy two prongs to prove a claim, an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of a right to due process, and a "subjective prong"—perhaps better classified as a "*mens rea* prong" or "mental element prong"—showing that the officer acted with at least deliberate indifference to the challenged conditions. The reason that the term "subjective prong" might be a misleading description is that . . . the Supreme Court has instructed that "deliberate indifference" roughly means "reckless," but "recklessness" can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known).

849 F.3d at 29 (emphasis in original). "[U]nder the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." <u>Id.</u> at 35. "In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." <u>Id.</u> This "requires proof of a *mens rea* greater than negligence." <u>Id.</u> at 36. Accordingly, this two-prong test requires a plaintiff-pretrial-detainee to satisfy: (1) an objective prong, showing that the challenged condition was sufficiently serious to constitute an objective

---

and <u>O'Dell</u> was issued in 2014, after <u>Caiozzo</u> was decided but before <u>Caiozzo</u> was overruled by <u>Kingsley</u> and <u>Darnell</u>. Insofar as <u>Vallen</u> or <u>O'Dell</u> can be construed as applying an Eighth Amendment subjective intent standard in the context of a Fourteenth Amendment claim, those portions of <u>Vallen</u> and <u>O'Dell</u> have been overruled by <u>Kingsley</u>, <u>Darnell</u>, and their progeny. The Second Circuit now holds that "deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of malicious or callous state of mind." <u>Charles</u>, 925 F.3d at 86.

deprivation of a right to Fourteenth Amendment Due Process; and (2) a mens rea or mental element prong, showing that the officer knew or should have known that the condition would pose a substantial risk to the detainee.

Because deliberate indifference claims brought by pretrial detainees and deliberate indifference claims brought by involuntarily committed developmentally disabled persons both apply the Due Process Clause of the Fourteenth Amendment, the Court follows <u>Darnell</u>'s two-prong deliberate indifference test here. An involuntarily committed developmentally disabled plaintiff bringing a Fourteenth Amendment Due Process claim against a non-professional must satisfy: (1) an objective prong, showing that the challenged condition was sufficiently serious to constitute an objective deprivation of a right to Due Process; and (2) a mens rea or mental element prong, showing that the non-professional knew or should have known that the condition would pose a substantial risk to the involuntarily committed developmentally disabled plaintiff. <u>See</u> <u>Darnell</u>, 849 F.3d at 29; <u>cf.</u> <u>Charles</u>, 925 F.3d at 87 ("[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to . . . medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to [a plaintiff's] health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to [a plaintiff's] health." (emphasis in original)).

Defendant argues that the Court should dismiss Plaintiff's bodily integrity claim because "the Plaintiff fails to allege any intentional conduct on the part of the Defendant that would give rise to a violation of the Plaintiff-Decedent's rights under the Fourteenth Amendment." Mot. to Dismiss at 9 (emphasis added). Defendant asserts that "Plaintiff's claim also fails because there is absolutely nothing in the Plaintiff's Amended Complaint to establish that the Defendant had a

17

purpose to cause harm . . . ." Id. However, Defendant's arguments do not reflect the deliberate indifference standard that applies in this case.[8]

Under the Fourteenth Amendment Due Process Clause, an involuntarily committed developmentally disabled person may establish an objective deprivation by showing that the conditions posed an unreasonable risk of serious damage to his or her safety and bodily integrity, including the risk of serious damage to his or her physical and mental soundness. See Darnell, 849 F.3d at 30 ("Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" (citations omitted) (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) and LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972))).

In this case, Plaintiff argues that there is, "an affirmative duty of state officials to provide reasonable safety for all individuals housed in group homes for the developmentally disabled." Am. Compl. ¶ 33. Plaintiff alleges that "OPWDD has strict policies and procedures about the transport of its residents[,]" Id. ¶ 12, and that "[t]hese policies require a resident to be transported in the back seat of a car or other vehicle, and to be restrained with a seat belt." Id. According to Plaintiff, Plaintiff-Decedent "would most likely not have been seriously harmed had he been restrained in the back seat" by Defendant, as allegedly required by OPWDD policies and procedures. Id. Additionally, Plaintiff asserts that OPWDD "policies also direct that employees of the State of New York . . . do not drive a vehicle while under the influence of drugs, including prescription drugs." Id. ¶ 13. Plaintiff alleges that Defendant "was also driving under the

_____

[8] Defendant's Motion to Dismiss notes that Plaintiff has stated that "Defendant's operation of her vehicle was 'reckless' and constitutes 'deliberate indifference,'" which is the proper standard here. Mot. to Dismiss at 9.

influence of prescriptions Adderall and Xanax . . . ." Id. ¶ 15. Furthermore, Plaintiff asserts that Defendant "was driving the transport van in a reckless manner and at an unsafe rate of speed, in addition to falling asleep because of her use of prescription medications." Id. at ¶ 14.

Accordingly, the Court finds that Plaintiff's allegations meet the Fourteenth Amendment Due Process objective prong, because (1) Defendant's alleged restraint of Plaintiff-Decedent with a seatbelt in the front seat, rather than the back seat, of the van, (2) Decedent's use of prescription drugs, in violation of OPWDD policies and procedures, and (3) Defendant's speeding, posed an unreasonable risk to Plaintiff-Decedent's safety, and placed Plaintiff-Decedent at serious risk of physical and mental harm, which ultimately resulted in Plaintiff-Decedent's death. See Darnell, 849 F.3d at 30. Therefore, Plaintiff has plausibly pled the objective prong for a violation of Plaintiff-Decedent's rights to safety and bodily integrity.

Turning to the mens rea prong or mental element prong, the Court finds that Defendant's assertion that "the Plaintiff fails to allege any *intentional* conduct on the part of the Defendant" is unavailing. Mot. to Dismiss at 9 (emphasis added). As the Second Circuit has stated, "deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of malicious or callous state of mind." Charles, 925 F.3d at 86. Accordingly, under the Fourteenth Amendment Due Process Clause, an involuntarily committed developmentally disabled person may establish the mens rea or mental element prong with regard to a non-professional defendant by showing "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [involuntarily committed developmentally disabled person] even though the defendant-official knew, or should have

known, that the condition posed an excessive risk" to the involuntarily committed developmentally disabled person's safety or bodily integrity. <u>Darnell</u>, 849 F.3d at 35.

Here, Plaintiff alleges, based on OPWDD's policies and procedures, that Defendant knew or should have known that failing to secure Plaintiff-Decedent with a seatbelt in the front seat of the transport van, rather than the back seat, driving under the influence of prescription drugs—particularly prescription drugs that allegedly caused Defendant to fall asleep—and driving at an unsafe rate of speed, posed a substantial risk to Plaintiff-Decedent's safety and bodily integrity. Am. Compl. ¶¶ 12–18. Thus, Plaintiff has plausibly pled the mens rea prong or mental element prong for a violation of Plaintiff-Decedent's rights to reasonable safety and bodily integrity. Accordingly, Plaintiff has plausibly stated a Section 1983 claim under the Fourteenth Amendment Due Process Clause against Defendant for failure to provide for the safety of an institutionalized individual and for violating an institutionalized individual's right to bodily integrity.

### C.  Deliberate Indifference to Medical Needs

As noted above, the Second Circuit has stated "that deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." <u>Charles</u>, 925 F.3d at 86 (citing <u>Darnell</u>, 849 F.3d at 33–34). The Second Circuit stated in <u>Charles</u> that "[a]lthough <u>Darnell</u> did not specifically address medical treatment, the same principle applies" to Fourteenth Amendment deliberate indifference to medical needs claims. <u>Charles</u>, 925 F.3d at 87. <u>Charles</u> stated that <u>Darnell</u> found "the same [Fourteenth Amendment] standard applies to claims for deliberate indifference to medical needs because 'deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment.'" <u>Id.</u> (quoting <u>Darnell</u>, 849 F.3d at 33

n.9). Thus, the Second Circuit also applies the Darnell test to Fourteenth Amendment deliberate indifference to medical needs claims. See Charles, 925 F.3d at 86–87.

Accordingly, to state a claim for Fourteenth Amendment deliberate medical indifference, "a plaintiff must satisfy a two-prong test." Guishard v. Gregory, No. 19-CV-1475, 2022 LEXIS 143690, at *17 (N.D.N.Y. Aug. 11, 2022) (citing Darnell, 849 F.3d at 29), report and recommendation adopted in 2022 U.S. Dist. LEXIS 159776 (N.D.N.Y. Sept. 6, 2022). "The first [prong] is objective, 'and considers whether the alleged deprivation of adequate medical care [was] sufficiently serious.'" Guishard, 2022 U.S. Dist. LEXIS 143690, at *17 (quoting Spavone v. N.Y. Dep't of Corr. Servs. 719 F.3d 127, 138 (2d Cir. 2013)). "The second 'mental' [prong] ensures that the defendant acts with at least deliberate indifference to the challenged conditions." Guishard, 2022 LEXIS 143690 at *17. Under this prong, "a Fourteenth Amendment claim for deliberate indifference to . . . medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to [a plaintiff's] health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to [a plaintiff's] health." Charles, 925 F.3d at 87 (emphasis in original).

"A plaintiff must show 'something more than mere negligence' to establish deliberate indifference in the Fourteenth Amendment context." Id. at 87 (quoting Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)). "Thus, 'mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm.'" Charles, 925 F.3d at 87 (quoting Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000)).

While Defendant's objections largely focus on the second mental prong of deliberate indifference, the Court will address both prongs for the sake of clarity.

The Court begins with the objective prong. Plaintiff alleges that Defendant "made no effort to provide first aid to [Plaintiff-Decedent], despite being largely uninjured in the accident." Am. Compl. ¶ 26. Plaintiff explains that, instead, "Martinez was further complaining about what 'the state is going to do to me' and that she worked 'for the state, they're not going to [be] happy with me, do you know what they are going to do,' rather than attempting to assist Mr. Amrhein." Id. Plaintiff alleges that while Defendant exited the van, Plaintiff-Decedent "was pinned in his seat for several minutes until he died[,]" was "conscious for a period of time after the accident[,]" and "died in an agonizing . . . death, having suffered from severe internal injuries." Id. ¶ 8. As the Second Circuit explained in Charles, under the objective prong, "[t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration or extreme pain." Charles, 925 F.3d at 86. The Court finds that Plaintiff has pled facts plausibly indicating that Plaintiff-Decedent had a sufficiently serious injury that could produce extreme pain and death following the car accident—which ultimately concluded with Plaintiff-Decedent's demise.

Pursuant to the second mental prong of deliberate indifference, Defendant argues that "since the Defendant is not a medical provider and was not personally involved with the Plaintiff-Decedent's medical care, the Plaintiff is required to allege facts demonstrating that the Defendant *intentionally* denied or delayed access to medical care or that she *intentionally* interfered with Plaintiff's treatment." Mot. to Dismiss at 13 (emphasis added). Defendant cites to Simmons v. Riley, No. 18-CV-0984, 2018 U.S. Dist. LEXIS 209101 (N.D.N.Y. Dec. 10, 2018) and Crosswell v. McCoy, No. 01-CV-00547, 2003 U.S. Dist. LEXIS 3442 (N.D.N.Y. Mar. 11,

2003) in support of this argument. These cases are inapposite because the plaintiffs in both

Simmons and Crosswell were prisoners who brought claims pursuant to the Eighth Amendment,

see Simmons, 2018 U.S. Dist. LEXIS 209101, at *1–2; Crosswell, 2003 U.S. Dist. LEXIS 3442,

at * 2–3. Defendant's discussion of deliberate medical indifference claims brought against "non

medical personnel," Mot. to Dismiss at 13 (quoting Simmons, 2018 U.S. Dist. LEXIS 209101, at

*5), simply restates the subjective prong of the Eighth Amendment deliberate indifference

standard, which is inapplicable here.[9] Instead, the Court applies the Fourteenth Amendment Due

Process Clause in this case, which uses a mens rea or mental element standard when addressing

deliberate medical indifference, rather than the subjective standard used in the Eighth

Amendment context. See Charles, 925 F.3d at 86–87; cf. Darnell, 849 F.3d at 33–35.

     As discussed above, because this is a claim for deliberate medical indifference brought

pursuant to the Fourteenth Amendment, Plaintiff need only allege "something akin to

recklessness" by pleading that Defendant "*knew* that failing to provide the complained of

medical treatment would pose a substantial risk to [Plaintiff's] health or that . . . [D]efendant[]

*should have known* that failing to provide the omitted medical treatment would pose a substantial

risk to [Plaintiff's] health." Charles, 925 F.3d at 86–87 (emphasis in original).

---

[9] Indeed, when Simmons and Crosswell discuss intentional denial of treatment by prison officials, both cases cite to Estelle v. Gamble, 429 U.S. 97 (1976). See Simmons, 2018 U.S. Dist. LEXIS 209101, at *5; Crosswell, 2003 U.S. Dist. LEXIS 3442, at * 17. Similarly, Banks v. #8932 Corr. Officer, No. 11-CV-8359, 2013 U.S. Dist. LEXIS 25507 (S.D.N.Y. Feb. 25, 2013), another case cited by Defendant, Mot. to Dismiss at 13, also dealt with a deliberate medical indifference claim brought by a prisoner and likewise cited to Estelle, see Banks, 2013 U.S. Dist. LEXIS 25507, at *1, *10. Estelle specifically dealt with Eighth Amendment deliberate indifference claims brought by prisoners, not Fourteenth Amendment deliberate indifference claims. See 429 U.S. 97 ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." (citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976) (plurality opinion)). Again, the Court concludes that the Eighth Amendment subjective intent standard used by Simmons, Crosswell, and Banks does not apply to this case.

"Whether the state knew or should have known of the substantial risk of harm to the [Plaintiff] is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id. "'A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Charles, 925 F.3d at 87 (quoting Farmer, 511 U.S. at 842).

Here, Plaintiff has alleged that Defendant "made no effort to provide first aid to [Plaintiff-Decedent], despite being largely uninjured in the accident[,]" Am. Compl. ¶ 26, and that Defendant instead "was . . . complaining about what 'the state is going to do to me' and that she worked 'for the state, they're not going to [be] happy with me, do you know what they are going to do,' rather than attempting to assist Mr. Amrhein[,]" id. Plaintiff alleges that during this time, Plaintiff-Decedent "was pinned in his seat for several minutes until he died[,]" was "conscious for a period of time after the accident[,]" and "died in an agonizing . . . death, having suffered from severe internal injuries." Id. ¶ 8.

The Court finds that Plaintiff has alleged facts indicating that Defendant knew or should have known that by (1) exiting the van, (2) leaving the injured Plaintiff-Decedent in the van's wreckage, and (3) failing to administer first aid to Plaintiff-Decedent as he was pinned in the front seat of the vehicle, posed an obviously substantial risk of harm to Plaintiff-Decedent's health. Am. Compl. ¶ 26, 38; see DeShaney, 489 U.S. at 200 (finding that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., . . . medical care . . . it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." (emphasis added)); cf. Cnty. of Sacramento, 523 U.S. at 852 ("Nor does any substantial countervailing interest excuse the State from making provision

24

for the decent care and protection of those it locks up; 'the State's responsibility to attend to the medical needs of prisoners [or detainees] does not ordinarily clash with other equally important governmental responsibilities.'" (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986))). Thus, Plaintiff has pled facts showing that Defendant knew or should have known that failing to provide medical care to Plaintiff-Decedent would pose a substantial risk to Plaintiff-Decedent's health. See Charles, 925 F.3d at 86–87 Accordingly, the Court finds that Plaintiff has plausibly stated a Section 1983 Fourteenth Amendment claim for deliberate indifference to Plaintiff-Decedent's medical needs.

### D.  Right to Substantive Due Process Pursuant to the "Special Relationship" Theory and the "State-Created Danger" Theory

In this case, Plaintiff seeks to bring a cause of action for "Violation of Constitutional Rights Under Color of State Law—The Right to Substantive Due Process of Law—Special Relationship Liability/State Created Danger" Am. Compl. at 12 (emphasis omitted).

"'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.'" Fabrikant v. French, 691 F.3d 193, 206 (2d Cir. 2012) (quoting Flagg v. Youngers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005)). "'A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.'" Fabrikant, 691 F.3d at 206 (quoting Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003)). "'[S]tate action requires both an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible, and that the party charged with the deprivation must be a person who may fairly be said to be a state actor."

Fabrikant, 691 F.3d at 206 (internal quotations omitted) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)).

As noted above, "[a]s a general matter, a State is under no constitutional duty to provide substantive services for those within its border." Youngberg, 457 U.S. at 317. Youngberg set forth an exception to this general rule by holding that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney, 489 U.S. at 199 (citing Youngberg, 457 U.S. at 317).

Whereas Youngberg dealt with the question of *State action*, the Supreme Court in DeShaney stated with regard to *private action* that "nothing in the language of the Due Process Clause [of the Fourteenth Amendment] itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney, 489 U.S. at 195. The Second Circuit has developed two exceptions to DeShaney's general rule that the Due Process Clause of the Fourteenth Amendment "'generally confer[s] no affirmative right to governmental aid'" with respect to private actors "'even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.'" Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2009) (quoting DeShaney, 489 U.S. at 196).

"First, the state or its agents may owe a constitutional obligation to the victim of *private violence* if the state had a 'special relationship' with the victim." Matican, 524 F.3d at 155 (emphasis added). "Second, the state may owe such an obligation if its agents 'in some way had assisted in creating or increasing the danger to the victim.'" Id. (quoting Dwares v. City of New York, 985 F.2d 94, 98–99 (2d Cir. 1993)). Thus, "[i]n the Second Circuit, there are 'two separate

and distinct theories' under which a state actor's failure to protect against *private violence* can

violate substantive due process—the 'special relationship' theory and the 'state-created[]danger

theory." <u>Golian v. N.Y. City Admin. for Children Servs.</u>, 282 F. Supp. 3d 718, 728 (S.D.N.Y.

2017) (emphasis added) (quoting <u>Benzman v. Whitman</u>, 523 F.3d 119, 127 (2d Cir. 2008)). The

"distinction between these two categories of cases suggests that 'special relationship' liability

arises from the relationship between the state and a particular victim, whereas 'state created

danger' liability arises from the relationship between the state and the private assailant." <u>Pena</u>,

432 F.3d at 109. "If a plaintiff's claim satisfies one or both of these theories, the plaintiff must

also show that the defendant's conduct was 'so egregious, so outrageous, that it may fairly be

said to shock the contemporary conscience' to sustain a substantive due process claim." <u>Golian</u>,

282 F. Supp. 3d at 728 (quoting <u>Matican</u>, 524 F.3d at 155).

 In Plaintiff's purported "The Right to Substantive Due Process of Law—Special

Relationship Liability/State Created Danger" cause of action, Plaintiff asserts that "[u]nder the

Fourteenth Amendment, when an individual is placed into custody or under the care of *the

government*, those *government officials* have an affirmative obligation to protect the safety and

wellbeing of that individual." Am. Compl. ¶ 43 (emphasis added). The Court agrees that this is

indeed, a statement of a well-settled principle of law. <u>See, e.g.</u>, <u>Youngberg</u>, 457 U.S. at 317;

<u>DeShaney</u>, 489 U.S. at 199. Plaintiff also asserts that "[i]n the alternative, under the Fourteenth

Amendment, a *government official* is forbidden from affirmatively placing an individual in

danger by virtue of that official's actions." Am. Compl. ¶ 44 (emphasis added). Elsewhere in the

Amended Complaint, Plaintiff alleges: "Defendant Darlene Martinez . . . was employed by the

New York State Office for People with Developmental Disabilities (OPWDD)[,]" <u>id.</u> ¶ 5;

"Decedent Robert Amrhein was a resident of an OPWDD group home[,]" <u>id.</u> ¶ 6; the "passenger

van" driven by Martinez "was owned and operated by the New York State OPWDD[,]" id.; and "Defendant Martinez drove Mr. Amrhein on June 9, 2020 in a New York state vehicle pursuant to her job duties as an employee of OPWDD[,]" id. Accordingly, all of these allegations relate to Defendant's role as a *State actor*. In contrast, the special relationship theory and state-created danger theory both impute State action onto *private actors*. See Matican, 524 F.3d at 155; Golian, 282 F. Supp. 3d at 728. As such, neither the special relationship nor the state-created danger theories appear to be applicable in this case.

Defendant does not raise this issue in the Motion to Dismiss. See generally Mot. to Dismiss. Likewise, Defendant does not address this issue in the Reply. See generally Reply. The Court is generally hesitant to dismiss a claim sua sponte, particularly because Defendant did not raise these objections. See In re Parmalat Secs. Litig., 377 F. Supp. 2d 390, 415 n.166 (S.D.N.Y. 2005) ("Generally, the defendant bears the burden of persuasion that the plaintiff has not stated a claim."). Nevertheless, the Court cannot conclude here that Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face[,]" Twombly, 550 U.S. at 570, with regard to the special relationship and state-created danger theories. "[A] court may dismiss a claim *sua sponte* under Rule 12(b)(6) where the nonmovant has had notice and an opportunity to be heard." In re Parmalat, 377 F. Supp. 2d at 415 n.166; see also Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1988) ("Although *sua sponte* dismissals may be appropriate in some circumstances . . . the general rule is that a district court has no authority to dismiss a complaint for failure to state a claim upon which relief can be granted without giving the plaintiff an opportunity to be heard." (internal citations and quotations omitted)). Accordingly, Plaintiff is given **thirty (30) days** from the date of issuance of this Memorandum-Decision and Order to file with the Court supplemental briefing, not to exceed ten pages, explaining why the Court should not dismiss Plaintiff's claim

derived from the special relationship and state-created danger theories sua sponte pursuant to Rule 12(b)(6).

### E.  State Law Negligence Claim

Supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Under § 1367(a), claims "'form part of the same case or controversy'" if these claims, "'derive from a common nucleus of operative fact.'" Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)). Pursuant to § 1367(a), "a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).

Plaintiff's Amended Complaint includes a claim for automobile negligence pursuant to N.Y. Insurance Law § 5102(d). Am. Compl. ¶¶ 50–54. Plaintiff states, "the injuries suffered by the Decedent, namely, his death, are sufficient to satisfy the serious injuries requirements of N.Y. Insurance Law § 5102(d)." Am. Compl. ¶ 51. This State statute defines "serious injury" as follows: "'Serious injury' means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; . . . permanent loss of use of body organ, member, function or system . . . ." N.Y. Ins. Law § 5102(d).

Defendant argues simply that because federal "Courts should generally decline to exercise jurisdiction over remaining state claims where the federal claims are dismissed" then "this Court should dismiss Plaintiff's state law claim for negligence." Mot. to Dismiss at 16.

However, the Court has found that several of Plaintiff's Section 1983 claims, brought pursuant to federal law, survive Defendant's Motion to Dismiss. Moreover, the Court also finds that Plaintiff's federal Section 1983 claims and Plaintiff's state law automobile negligence claim derive from a common nucleus of operative facts, based on the events at issue in all of these claims. See Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002) (finding that "[s]upplemental jurisdiction . . . is proper" when a "state [law] . . . claim arises out of approximately the same set of events as [a plaintiff's] federal [law] . . . claim"). Therefore, this Court will exercise supplemental jurisdiction over Plaintiff's state law automobile negligence claim.[10]

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss (Dkt. No. 27) is **DENIED**; and it is further;

**ORDERED**, that Plaintiff shall file with the Court within **thirty (30) days** from the date of issuance of this Memorandum-Decision and Order supplemental briefing, not to exceed ten pages, explaining why the Court should not dismiss Plaintiff's Section 1983 claim derived from the special relationship and state-created danger theories sua sponte pursuant to Rule 12(b)(6). Failure to file this supplemental briefing with the Court by this deadline will result in the sua

---

[10] Insofar as Defendant asks the Court to dismiss Plaintiff's Amended Complaint without leave to amend, Mot. to Dismiss at 16–17, that request is moot as to Plaintiff's Fourteenth Amendment deliberate indifference to bodily integrity claim, failure to provide for reasonable safety claim, and deliberate indifference to medical needs claim, as well as Plaintiff's State law negligence claim. Moreover, at this time the Court need not address this question with regard to Plaintiff's substantive due process claim derived from the special relationship and state created danger theories, because Plaintiff has the opportunity to provide further briefing on that matter.

sponte dismissal of Plaintiff's Section 1983 claim derived from the special relationship and state-created danger theories; and it is further

      **ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

      **IT IS SO ORDERED.**

DATED:      January 31, 2023
              Albany, New York

                              LAWRENCE E. KAHN
                              United States District Judge