UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARY A. SPIEZIO, *as Administratrix of*
*the Estate of* ROBERT AMRHEIN

                    Plaintiff,

-against-                                            1:21-CV-1254 (LEK/ML)

DARLENE MARTINEZ,

                    Defendant.

---

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Mary Anne Spiezio ("Plaintiff" or "Ms. Spiezio") brings this action on behalf of Robert Amrhein ("Plaintiff-Decedent" or "Mr. Amrhein") pursuant to 42 U.S.C. § 1983 against Defendant Darlene Martinez ("Defendant" or "Ms. Martinez"), alleging violations of Mr. Amrhein's constitutional rights in connection with Mr. Amrhein's death. Dkt. No. 25 ("Amended Complaint"). Plaintiff also brings a state law automobile negligence claim arising out of Mr. Amrhein's death, invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367. *See* Am. Compl. at 14.

Defendant now moves for summary judgment, Dkt. No. 73 ("Motion"), and provides a statement of material facts, Dkt. No. 73-1 ("Defendants' Statement of Material Facts" or "DSMF"). Plaintiff filed a response and cross-motion for summary judgment on Plaintiff's state law claims, Dkt. No. 83, 92 ("Response"), a response to Defendants' Statement of Material Facts, Dkt. No. 87 ("Response to Defendants' Statement of Material Facts" or "RDSMF"). Defendant filed a response in opposition to Plaintiff's cross-motion and a reply to Plaintiff's response to their Motion, Dkt. Nos. 96, 97, and a response to Plaintiff's Statement of Additional

Facts, Dkt. No. 96-1 ("Response to Plaintiff's Statement of Additional Facts" or RPSAF").

Plaintiff later filed a reply on their cross-motion. Dkt. No. 101.

For the reasons that follow, Defendant's motion is granted in part and denied in part.

Plaintiff's cross-motion for summary judgment on her state law claims is dismissed without prejudice.

## II.    BACKGROUND

### A.  Factual Background

The factual summary of this tragic action is taken from the parties' statements of material facts and the attached exhibits. Disputes of material fact in the record are noted.

Mr. Amrhein was a resident of a New York State Office for People with Developmental Disabilities ("OPWDD") OPWDD group home in Cambridge, New York. Am. Compl. ¶ 5–6. He was involuntarily committed to the custody of OPWDD due to his severe developmental disabilities. *Id.* ¶ 11. At all relevant times, Plaintiff alleges that Defendant was acting "pursuant to her job duties as an employee of OPWDD." *See id.* ¶ 6; *see also* Dkt. No. 73-2 ("Martinez Declaration") ¶¶ 3–5.

On June 9, 2020, Defendant was responsible for transporting Mr. Amrhein from his group home to a medical appointment in Albany, New York. Am. Compl. ¶ 6. That morning, Ms. Martinez reported to work for a 6 AM shift and signed out at 9:30 AM to begin Mr. Amrhein's transportation. Dkt. No. 85-20 at 1; Martinez Decl. ¶¶ 22, 26. She drove Mr. Amrhein "in a large Chevrolet passenger van" owned by OPWDD, pursuant to her job as an employee of OPWDD. Am. Compl. ¶ 6. Mr. Amrhein sat in the front seat of the vehicle with his seatbelt fastened. *See* Dkt. No. 96-1 at 9 ("Defendant's Response to Plaintiff's Counter Statement of Facts" or "DRCSF").

2

Ms. Martinez was driving with Mr. Amrhein in the southbound lane of State Route 40 in the Town of Schaghticoke, New York, at approximately 55 mph, in the lead up to the crash. Am. Compl. ¶ 7; Martinez Decl. ¶ 28. Along the route, Defendant "swerved off of the road to the right, colliding with a grove of trees." Am. Compl. ¶ 7. Video footage and data from the van's "black box" show that Ms. Martinez left the road at approximately 9:37 AM and that the crash occurred approximately three seconds later. *See* Am. Compl. ¶¶ 9–10; Resp. at 6. "[T]he brunt of the accident was borne by the passenger side of the vehicle, where [Mr.] Amrhein was sitting." Am. Compl. ¶ 7. Emergency services arrived on the scene at 9:42 AM. RDSMF at 28. And Mr. Amrhein was pronounced dead at 9:45 AM. *Id.* at 30. The Justice Center for the Protection of People with Special Needs ("Justice Center") investigated the events surrounding the crash. Dkt. No. 73-18. At the time of the incident, Ms. Martinez had Adderall and Xanax in her blood, and an Adderall pill bottle in her purse. Resp. at 8–10; Dkt. No. 85-21 ("Toxicology Report"); Dkt. No. 84-9 ("Richmond Report"); Am. Compl. ¶ 15.

Ms. Martinez, in a declaration attached to her motion, claims to "recall that just prior to the accident [] [she] saw an animal, which looked like a woodchuck up ahead . . . and the animal looked like it was about to cross onto the road," but "do[es] not have an independent recollection of swerving to avoid [it]." Martinez Decl. ¶¶ 30–31. Eyewitness testimony confirms that Ms. Martinez swerved but is inconsistent as to whether something resembling a "woodchuck" was on the road at the time. *See* Dkt. No. 73-10 ("Davis Deposition") at 8–9; *compare* Davis Deposition at 11–12 *with* Dkt. No. 73-9 ("Johnson Deposition") at 13–16, 20–22.

After the crash, Ms. Martinez made statements to eyewitnesses and law enforcement suggesting she swerved to avoid an animal on the road. *See, e.g.*, Dkt. No. 73-12 ("Police Report") at 1; Dkt. No. 73-11 ("Baldwin Deposition") at 14–15, 17–18; *see also* Dkt. No. 73-18

3

at 10 ("The law enforcement NYS MV-104a Accident Report showed the only contributing factor to the accident was animal's action."). However, according to Plaintiff, Martinez "did not perform first aid, . . . and was not even there to aid and comfort the man as he lay dying . . . . [i]nstead, she was up on the guardrail, complaining that she was going to lose her job." Resp. at 10.

### B. Procedural Background

Plaintiff commenced this action in this Court on November 23, 2021.[1] After Plaintiff amended her complaint, Defendants filed a motion to dismiss, Dkt. No. 27, which the Court later granted in part and denied in part. Dkt. Nos. 35, 43. Plaintiff's surviving claims are for: 1) Deliberate medical indifference as to Mr. Amrhein's medical needs in the aftermath of the crash in violation of the Fourteenth Amendment; 2) Recklessly disregarding Mr. Amrhein's right to bodily integrity while operating the state's vehicle in violation of the Fourteenth Amendment; and 3) Negligently driving and causing the pain, suffering, and wrongful death of Mr. Amrhein. Dkt. No. 35.

Defendant moves for summary judgment on these claims and asserts a qualified immunity defense. Plaintiff cross-moved for summary judgment on her state law claims.

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] The Court notes that Plaintiff also began a parallel state proceeding, *Spiezio v. State of New York*, with the New York Court of Claims on August 26, 2020 based on the facts in this case. *See* Dkt. No. 97-3 at 3; *infra* Part IV(B)(2). On April 19, 2024, the New York Court of Claims denied Plaintiff's motion for summary judgment on her state law claims concerning the liability and causation of Mr. Amrhein's death. Dkt. No. 97-5. The Plaintiff intends to proceed to trial in the New York Court of Claims on her state law causes of action. Dkt. No. 101 at 2.

judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, summary judgment cannot be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for its motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "conclusory allegations, speculation, or conjecture," *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" to support its claims, *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 133, 150 (2000). The Court "may not make credibility determinations or weigh the evidence." *Id.* Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of

material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

### A.    Federal Law Claims

#### 1.    *Deliberate Medical Indifference*

Defendant argues that this Court should grant summary judgment in her favor on Plaintiff's deliberate medical indifference claim. Mot. at 10–14.[2] Whether a defendant displayed deliberate medical indifference under the Fourteenth Amendment requires a plaintiff to show: 1) objectively, that "the alleged deprivation of adequate medical care was sufficiently serious;" and 2) that the defendant subjectively knew or "should have known that failing to provide the omitted medical treatment would pose a substantial risk to a plaintiff's health." *Spiezio v. Martinez*, 653 F. Supp. 3d 8, 25–26 (N.D.N.Y. 2023) (cleaned up). A pleading under the objective element must show that the condition is one that is urgent, as it "may produce death, degeneration or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). Whereas a pleading under the subjective element requires a showing of "a conscious disregard of a substantial risk of serious harm." *Id*. at 87. "Whether the [Defendant] knew or should have

---

[2] The Court further notes that Plaintiff, as the nonmovant on the federal claims, broadly contends that Defendant relies on "hearsay" in support of summary judgment. *See, e.g.*, Resp. at 2–4, 14. Plaintiff does not, however, identify specific statements that are inadmissible or explain why they could not be presented in admissible form at trial. While "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997), materials submitted at this stage "'need not be admissible in the form presented to the district court . . . . so long as the evidence in question 'will be presented in admissible form at trial.'" *Bunnenberg v. Liberty Mut. Fire Ins. Co.*, No. 22-CV-1174, 2024 WL 4278644, at *8 (N.D.N.Y. Sept. 24, 2024) (quoting *Smith v. City of New York*, 697 Fed. App'x. 88, 89 (2d Cir. 2017)). The Court therefore considers the record evidence to the extent it could be presented in admissible form at trial.

known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id*.

In the instant Motion, Defendant "concedes that Plaintiff-Decedent's medical needs were sufficiently serious because Plaintiff-Decedent was pronounced dead just minutes after the subject car accident." Mot. at 11. Therefore, the Court will focus its analysis on the subjective element.

The subjective prong of a deliberate medical indifference claim under the Fourteenth Amendment requires a plaintiff to show that the defendant acted with reckless disregard to their urgent medical needs when they "knew, *or should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety." *Charles*, 925 F.3d at 87 (citing *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Delays in providing medical treatment may violate the constitution where "an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Lewis v. Sheridan*, No. 12-CV-31, 2014 WL 1096220, at *2 (N.D.N.Y. Mar. 19, 2014). However, "[d]eliberate indifference 'entails something more than mere negligence.'" *Wesolowski v. Kamas*, 409 F. App'x 476, 477 (2d Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Instead, the plaintiff must prove that there was "some conduct that shocks the conscience" or that there was an otherwise "barbarous act" alongside the Defendant's "intent to either deny or unreasonably delay access to needed medical care." *Young v. Choinski*, 15 F. Supp. 3d 172, 181 (D. Conn. 2014) (cleaned up).

Defendant argues that "at no time was [she] deliberately indifferent to Plaintiff-Decedent's medical needs." Mot. at 12. First, Defendant points to the fact that in the immediate aftermath of the crash, she attempted to help Mr. Amhrein out of the car, but quickly realized he was "gurgling, taking his last breathes, and was no longer there." *Id*. at 12–13. Next, Defendant

explains that her own medical injuries after the crash, including "a brain bleed, and hematomas to her right thigh and breast . . . . cuts against Plaintiff's argument that Defendant Martinez was somehow deliberately indifferent to Plaintiff-Decedent's medical needs." *Id.* at 13. Further, Defendant avers that the deposition testimony provided by Lieutenant Baldwin and the ambulance report shows that emergency services arrived on the scene within five minutes of the time Defendant swerved off the road and Mr. Amhrein was pronounced dead three minutes later. *See id.* at 13–14. Lastly, Defendant argues Plaintiff concedes there was no deliberate medical indifference because "Plaintiff cannot say whether or not the Defendant's failure to provide first aid to [the Plaintiff-Decedent] would have made a difference in preventing his passing." *Id* at 14 (quoting Am. Compl. at ¶ 27).

In turn, Plaintiff argues that because Defendant did not attempt to provide any aid to Mr. Amhrein, she was deliberately indifferent as a matter of law. *See* Resp. at 10. Plaintiff points to the fact that despite Defendant's observations, other witnesses saw that Mr. Amhrein seemed "to be in pain, was moaning, was conscious for a period of time, and was moving his upper body." *Id*. Plaintiff subsequently argues that even though Mr. Amhrein was suffering from life-threatening injuries, not only did Defendant not know they were life-threatening, she "was not there to aid and comfort the man as he lay dying." *Id*. "Instead, she was up on the guardrail, complaining that she was going to lose her job." *Id*.

At this stage, the question for the Court is whether there are enough facts in the record to support a finding of recklessness on behalf of the Defendant. After considering all the evidence, the Court finds there is not.

The core of a deliberate medical indifference claim is that a defendant, knowing the plaintiff suffered a serious medical need, "conscious[ly] disregard[ed] . . . a substantial risk of

serious harm." *See Charles*, 925 F.3d at 87 (quoting *Cuocco v. Moritsugu,* 222 F.3d 99, 107 (2d Cir. 2000). Here, the record shows that approximately eight minutes passed between when the van departed from the road (~9:37 AM) and when Mr. Amhrein was pronounced dead (~9:45 AM). *See* RDSMF at 27–30. While the parties dispute the extent to which Ms. Martinez should have provided first-aid in the face of Mr. Amhrein's life-threatening injuries, Plaintiff concedes that there is not much the Defendant could have done, considering "[h]is spinal cord and liver were severed, and he had extensive internal bleeding." Resp. at 10. Indeed, this conclusion is supported by witness testimony from Lieutenant Baldwin who "first made contact with Mr. Amrhein" six minutes after crash, *see* RDSMF at 30, and determined that "due to injuries incompatible with life due to the eight-inch piece of steel impaled through both sides of his head, [there would be no] attempted [resuscitation] or rescue due to circumstances that [underlay] the patient's severity and untimely death." Baldwin Deposition at 28. These facts do not show that there was a conscious disregard or significant delay in Ms. Martinez's attempt to render aid to Mr. Anmhrein. In fact, they seem to clearly show that no amount of aid could have saved his life at that point given the nature of his injuries. *See id*. at 32–33 (noting Lieutenant Baldwin left the vehicle after three minutes once he determined Mr. Amhrein's "injuries were incompatible with life.").

Instead, Plaintiff avers that because Defendant was not certain of Mr. Amrhein's impending death and that she was observed complaining that she would lose her job, the fact that she did not administer aid points to deliberate indifference. But this framing is contradicted by the evidence in the record. First, given Ms. Martinez's observations that Mr. Amrhein was in his final moments, a reasonable person would conclude that death was imminent and that providing aid would not mitigate Mr. Amrhein's his injuries. *See* Martinez Decl. at ¶ 35–36; *see also*

9

Baldwin Deposition at 28. Second, multiple witnesses testified that Ms. Martinez appeared frantic and concerned about Mr. Amrhein's well-being. *See e.g.*, Baldwin Deposition at 16 ("She immediately was distraught, yelling, you need to help him. You need to help him. I quickly made contact with her and said, I am a paramedic. Are you hurt? She said, no, I don't think so, but please help him."); Davis Deposition at 15 ("[W]hen she got out, she was very upset and shaken and she kept saying that the passenger of the vehicle was not well and that they had to get him out."); Johnson Deposition at 61 (noting Defendant "knew that [Mr. Amrhein] was gurgling" and told Ms. Johnson "My Bobby is in the back, you got to help him." ). While it may be true that Ms. Martinez was worried about the future of her employment with OPWDD, it cannot be said be said she showed no care or concern for Mr. Amrhein that would rise to the level of deliberate indifference.

Accordingly, given the record's dearth of evidence as to Ms. Martinez's alleged deliberate indifference in the aftermath Mr. Amrhein's death, the Court grants summary judgment for Defendant on Plaintiff's deliberate medical indifference claim.

### 2. *Deliberate Indifference to the Right of Bodily Integrity*

Defendant further moves that this Court should grant summary judgment for her on Plaintiff's deliberate indifference to the right of bodily integrity claim. Mot. at 15. Under the Fourteenth Amendment, an involuntarily committed developmentally disabled person has a right to safe living conditions. *See Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982) ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed . . . in unsafe conditions."). As in the deliberate medical indifference context, to survive summary judgment, Plaintiff must satisfy a two-part test. First, a showing that "the conditions, either alone or in combination, pose an

unreasonable risk of serious damage to his health," *Darnell*, 849 F.3d at 29 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). Second, that "the [Defendant] knew or should have known that the condition would pose a substantial risk to the involuntarily committed developmentally disabled plaintiff." *Spiezio v. Martinez*, 653 F. Supp. 3d 8, 23 (N.D.N.Y. 2023) (citing *Darnell*, 849 F.3d 29).

Defendant does not explicitly state which prongs of the analysis Plaintiff fails to meet at this stage but avers granting summary judgment on this claim is proper for several reasons. First, because there is no OPWDD policy in place that would have restricted Mr. Amrhein from riding in the front seat on the day of the crash and that a report "concluded that at the time of the accident [Mr. Amrhein]'s seatbelt was securely fastened." Mot. at 17–18; *see also* Dkt. No. 73-18 at 11 ("The investigation also found that the victim's seatbelt was properly affixed."). Second, because "the record is devoid of any proof indicating that Defendant-Martinez was speeding when the accident occurred." Mot. at 18. And finally, because there is no evidence that Defendant acted recklessly in operating a vehicle that morning under the influence of prescription drugs. *Id*. at 18–20.

Plaintiff, "with the benefit of discovery," has conceded Defendant's first two points. Resp. at 5–6, 9. Instead, she argues that Ms. Martinez "operated the state vehicle in a reckless and dangerous manner, especially after leaving the roadway and failing to brake, reduce velocity, or take evasive action." *Id.* at 9. Further, that Defendant's alleged impairment using prescription drugs in the lead up to the crash "impacted [her] sleep, reaction time, and the ability to drive," and that she "knew, or should have known, that she should not have been driving on June 9, 2020." *Id*. at 7–9. Finally, Plaintiff avers that even though "Mr. Amrhein was ambulatory," "there was a wheelchair in the van, presumably for his use," and OPWDD has vehicle safety

policies in place for individuals using wheelchairs which includes restraining them with the use of "a tether system, which us only present in the back seat of the vehicle." *Id.* at 9.

The Court will first discuss Plaintiff's allegation that Defendant consciously disregarded the risks of driving while under the influence of prescription drugs, ultimately leading to Mr. Armhein's death. *Id.* at 5–9. Under Plaintiff's theory of the case, Ms. Martinez had taken Adderall at 2 PM on June 8, 2020. *Id*. at 9. Taking Adderall interfered with Defendant's ability to properly rest after a shift where she worked from 2PM to midnight and began working again at 6AM the next morning. *See id*. 8–9; Dkt. No 85-20 at 1. On the morning of June 9, Ms. Martinez "took Xanax at six o'clock [AM]." *Id*. Later that day, while she was transporting Mr. Amrhein to his appointment, she either fell asleep or purposefully drove off the road, causing the death of Mr. Amrhein. *See id.* at 6; Dkt. No. 84-6 ("Silver Report") at 9. This conclusion is based on, inter alia, Ms. Martinez's alleged lack of evasive actions during the collision and her inability to explain why she did not take such actions. Resp. at 6–7; *see also* Silver Report at 9–10.

Plaintiff simply offers no evidence to support the contention that Ms. Martinez used Adderall either June 8 or June 9. As a threshold matter, while Ms. Martinez's toxicology report shows the presence of Adderall and Xanax in her blood, it neither tells us the degree to which she might have been impaired, nor whether Ms. Martinez took either drug the morning of the crash. *See generally* Toxicology Report. Without this information, Plaintiff's expert witness opines that the presence of either drug in Ms. Martinez's blood suggests that it had been taken "recently." Richmond Report at 6–7. Defendant's expert suggests that both drugs could still register on a toxicology report up to two to three days after their use. Dkt. No. 73-21 ¶¶ 4–8. Absent any additional evidence, the logical inference here is that the toxicology report is inconclusive as to whether Ms. Martinez ingested either substance on June 8 or June 9.

Apart from this, Plaintiff merely offers a conclusory assertion that Ms. Martinez "did not sleep well, if at all, because she took Adderall at two o'clock in the afternoon the prior day." Resp. at 9. Plaintiff cites to no evidence in the record to support this assertion. While Ms. Martinez was prescribed Adderall and had it with her at the time of the crash, she cannot say for certain whether or not she ingested the drug. *See* Dkt. No. 73-7 at 25–26, 28–29, 33–35. Ultimately, because the Plaintiff relies purely on speculation rather than concrete evidence, there is no genuine issue of material fact regarding Ms. Martinez's use of Adderall on the relevant dates. *See Fischer*, 968 F.3d at 221. Therefore, any claim premised on this theory cannot survive summary judgment. *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 622 (2d Cir. 2016) (affirming a grant of summary judgment where "Plaintiff['s] claim against [Defendant] is premised on speculation).

However, there is a genuine dispute of material fact as to whether or not Defendant ingested Xanax the morning of June 9, 2020. Plaintiff's only evidence of any alleged use of prescription drugs by the Defendant appears grounded in Ms. Martinez's statement to the Rensselaer County Sheriff's Office. *See* Dkt. No. 73-13. In Opposition, Plaintiff explains that "Martinez admitted in a statement to the Rensselaer County Sheriff's Office that she ingested Xanax that morning, as well as her other medications." Resp. at 8. Plaintiff appears to draw from the following text to support this allegation:

> "I do take several medications including 40 mlg Prozac, Prilosec 20 mlg, Levothyroxine 20 mlg, Xanax as needed for depression and anxiety and on other medication for clorestoral [sic.] I took all my medication as I do every other morning. Today I took one 800 mlg Ibuprophen [sic.] for pain due to having lyme disease."

Dkt. No. 73-13 at 3.

Yet, at her first deposition, Ms. Martinez cast doubt on her statement, explaining that it "can't be accurate because I had just been in a severe car crash and had a head injury." Dkt. No.

73-6 at 36.[3] She repeatedly denied using Xanax the morning of the crash, saying she "would never take it in the morning." *Id.* at 24, 26, 35.

In light of this inconsistency, and the fact that Ms. Martinez's sworn statements "contain[] contradictory [evidence] which could lead a reasonable jury to conclude" that she took Xanax the morning of the crash, the Court finds a genuine dispute of material fact exists and thus granting summary judgment would be improper. *See Sadowski v. Ng,* No. 18-CV-10113, 2022 WL 799636, at *6 (S.D.N.Y. Mar. 15, 2022). Because this factual issue alone suffices to deny summary judgment, the Court need not address Plaintiff's additional theories of recklessness, which appear either speculative, *see* Silver Report at 9–10, or ancillary, *see* Resp. at 9.

Accordingly, Defendant's summary judgment motion on Plaintiff's right to bodily integrity claim is denied.

### 3. Qualified Immunity

Finally, the Court will address Defendant's qualified immunity argument. Ms. Martinez argues that she is entitled to qualified immunity on both of Plaintiff's federal claims because "[n]o reasonable official confronted with the circumstances at issue in this case would believe that they were violat[ing] a clearly established constitutional right." Mot. at 24–25. In opposition, Plaintiff avers that Defendant had "adequate notice of [her] illegal conduct for purposes of qualified immunity" because, a reasonable person would know, inter alia, "[n]o one should operate a state-owned vehicle having barely slept, while consuming prescription medications that adversely affect their ability to drive." Resp. at 12. Moreover, she alleges "[t]he Defendant does not deny that the rights addressed here are clearly established." *Id.*

---

[3] Ms. Martinez's statement was recorded by the Rensselaer County Sheriff's Office at 1:10PM on June 9, roughly 3.5 hours after the crash. Dkt. No. 73-13 at 2.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Further, "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Anderson v. Creigton*, 483 U.S. 635, 641 (1987)).

Because the Court has already found that Plaintiff cannot establish a constitutional violation on her deliberate medical indifference claim, there is no need to consider Defendant's request for qualified immunity on that claim. *See Torres v. Reis*, No. 22-CV-1008, 2025 WL 2374003, at *11 n.15 (D. Conn. Aug. 14, 2025).

Plaintiff's right to bodily integrity claim, however, stands on different footing. The right of an involuntarily committed developmentally disabled individual to reasonably safe conditions of confinement has long been clearly established. *Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982). Whether Defendant recklessly disregarded that right by driving while impaired presents a genuine dispute of material fact, as discussed above. At this stage, therefore, the Court cannot conclude as a matter of law that Defendant's conduct was objectively reasonable. *See Lennon*, 66

F.3d 416, 420; *Thigpen v. Cnty. of Erie*, No. 11-CV-466V, 2016 WL 1741367, at *2 (W.D.N.Y. May 3, 2016) (finding that "summary judgment based on qualified immunity is inappropriate [where] there remains a dispute about material facts.")

Accordingly, Defendant's motion for summary judgment on the basis of qualified immunity is denied as to Plaintiff's bodily integrity claim.

### B. State Law Claims

Defendant moved for summary judgment on Plaintiff's automobile negligence claim related to Mr. Armhein's pain, suffering, and wrongful death. *See* Mot. at 20–24; *see also* Am. Compl. ¶¶ 50–54. Defendant makes two arguments. First, Defendant argues that a "negligence [claim] arising from the subject motor vehicle accident" cannot be brought to federal court under Section 1983. *See* Mot. at 20. Second, Defendant avers that this court grant summary judgment because "[c]ourts . . . generally decline to exercise jurisdiction over remaining state claims where the federal claims are dismissed." *Id.* at 23.

Plaintiff cross-moved for summary judgment on the state law negligence claims. Resp. at 14–15. First, she argues that if this Court "find[s] that there are no Federal claims here, the Plaintiff concedes that the Court will no longer have jurisdiction over this proceeding." *Id.* at 13. Next, if the Federal claims survives, the Plaintiff argues that this Court retains jurisdiction over her state law claims. However, she concedes, "for sake of argument," that Ms. Martinez's alleged "swerving, and leaving the roadway" was "reasonable as it relates to trying to save the life of a groundhog on June 9, 2020." *Id.* at 14. Instead, her negligence theory relies on Ms. Martnez's alleged lack of evasive action *after* she left the roadway. *Id.*

1.    *Defendant's motion for summary judgment on Plaintiff's state law negligence*
*claim is denied.*

28 U.S.C. Section 1367(a) "grants federal courts supplemental jurisdiction over all claims
that are so related to claims in the action within its original jurisdiction that the related claims
form part of the same case or controversy under Article III of the Constitution." *Shibetti v. Z*
*Rest., Diner & Lounge, Inc.*, 478 F. Supp. 3d 403, 408 (E.D.N.Y. 2020); *see* 28 U.S.C. § 1367;
"[W]here section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is
available *only if* founded upon an enumerated category of subsection 1367(c)." *Catzin v. Thank*
*You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (quoting *Shahriar v. Smith & Wollensky*
*Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2018)). Section 1367(c) provides that:

> "The district courts may decline to exercise supplemental jurisdiction over a claim under
> [§ 1367(a)] if—(1) the claim raises a novel or complex issue of State law, (2) the claim
> substantially predominates over the claim or claims over which the district court has
> original jurisdiction, (3) the district court has dismissed all claims over which it has
> original jurisdiction, or (4) in exceptional circumstances, there are other compelling
> reasons for declining jurisdiction."

28 U.S.C. § 1367(c). However, even assuming one of these elements is met, "a district court
should not decline to exercise supplemental jurisdiction unless it also determines that doing so
would not promote . . . economy, convenience, fairness, and comity." *Catzin,* 899 F.3d at 85
(quoting *Jones v. Ford Motor Credit Co.,* 358 F.33d 205, 214 (2d Cir. 2004)).

Defendant's arguments for summary judgment on Plaintiff's state law claims are
inapplicable. First, Defendant appears confused as to the nature of Plaintiff's claim. Ms.
Martinez cites to case law for the general proposition that "[a]uto accidents do not, in and of
themselves, give rise to federal causes of action." Mot. at 20 (quoting *Carrasquillo v. City of*
*New York*, 324 F. Supp 2d 428, 436 (S.D.N.Y. 2004)) (alteration in original). Defendant is

correct that "[c]ourts do not recognize negligence as a basis for a cause of action upon which a court can grant relief under [Section] 1983." *Jeffers v. Doe*, No. 99-CV-335, 2005 WL 2240686, at *7 (N.D.N.Y. Sept. 13, 2005) (citing *Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir.1996)). "However, pursuant to 28 U.S.C. § 1367, a federal court may exercise jurisdiction over a state law claim, such as negligence, when that claim is substantially related to the federal claim that established the basis for the federal court's original jurisdiction." *Id*.

Here, the Court understands Plaintiff's negligence claim as arising under New York law, and not pursuant to Section 1983. In her Amended Complaint, Plaintiff explicitly invokes this Court's supplemental jurisdiction, and later, explicitly states that her claims regarding Mr. Amrhein's death "are sufficient to satisfy the serious injuries requirements of N.Y. Insurance Law § 5102(d)." *See* Am. Compl. ¶¶ 3, 51. And as this Court previously stated, "Plaintiff's federal Section 1983 claims and Plaintiff's state law automobile negligence claim derive from a common nucleus of operative facts, based on the events at issue in all of these claims." *Spiezio v. Martinez*, 653 F. Supp. 3d 8, 31 (N.D.N.Y. 2023). Thus, Plaintiff's claim on this matter arises under state law and she is invoking the court's supplemental jurisdiction; Defendant's argument here is simply off base.

Defendant's second argument is also inapplicable. The Court is denying summary judgment on Plaintiff's deliberate indifference to the right of bodily integrity claim. *See supra* Part IV (A)(2). Thus, the Court may not decline to exercise supplemental jurisdiction under Section 1367(c)(3), because the Court has not dismissed all claims over which it had original jurisdiction. *See Catzin*, 899 F.3d at 85.

Accordingly, Defendant's motion for summary judgment on Plaintiff's state law negligence claim is denied.

    2.    *Plaintiff's state law negligence claim is dismissed without prejudice.*

Plaintiff has cross-moved for summary judgment on her state law automobile negligence claim. Dkt. No. 83; *see also* Resp. For the following reasons, her state law claim is dismissed without prejudice and her cross-motion is denied as moot.

Through Defendant's reply brief, the Court was made aware that Plaintiff has pursued a strikingly similar claim against the State of New York in the New York Court of Claims. Dkt. No. 96 at 5–8; Dkt. No. 97-5 ("Court of Claims Order"). Invoking the doctrine of issue preclusion, Martinez argues that Plaintiff's cross-motion should be denied because it "does nothing more than raise the same exact arguments that she previously litigated and lost [in that court]." *Id.* at 5–6. As part of her briefing, Martinez explains that, "[i]n both motions, Plaintiff also uses the exact same expert . . . [and also] submitted many of the same exhibits, including identical photographs and video footage." *Id*. at 8. Further, Martinez avers that "Plaintiff had a full and fair opportunity [in the state court proceeding] to litigate the issue of whether Defendant Martinez was negligent." *Id*.

In reply, Plaintiff seems to acknowledge the "prior motion practice in the New York Court of Claims," but avers that Defendant's argument is misplaced because: 1) that case lacked a final judgment on the merits; and 2) "[t]he issues presented for the Court's consideration here are also distinctly different from the arguments considered in [state court]." *See* Dkt. No. 101-1 at 9–10.

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding," *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 284 (2d Cir. 2012) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir.2002)) . "Under New York

law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (internal quotation marks omitted).

Upon review of the Court of Claims order, the Court agrees that that Court has not made final determination on Plaintiff's state law claim, and thus as a matter of law issue preclusion is not *yet* available. *See* Court of Claims Order at 7 (declining Plaintiff's motion for summary judgment because "[Plaintiff] has not eliminated all issues of fact whether there was a woodchuck, whether Ms. Martinez swerved to avoid it, and whether the emergency doctrine applies."). However, contrary to Plaintiff's contention, the state law negligence claim being litigated in the New York Court of Claims appears entirely duplicative of the negligence claim in the current action. Thus, the Court will, sua sponte, decline to exercise supplemental jurisdiction pursuant to Section 1367(c)(4), given that Plaintiff is litigating a nearly identical issue in New York State Court. *See* Dkt No. 101 at 2; *see also* Dkt. No. 96 at 5–12; Dkt. No. 101-1 at 8–10.

Section 1367(c)(4) provides that "in exceptional circumstances, there are other compelling reasons for declining [supplemental] jurisdiction." 28 § U.S.C. 1367(c)(4); *Bentivegna v. People's United Bank*, No. 14-CV-599, 2016 WL 3460374, at *7 (E.D.N.Y. June 21, 2016). While "[t]he Second Circuit has indicated that Section 1367(c)(4) should be applied narrowly," *Chompupong v. City Schenectady*, No. 117-CV-929, 2019 WL 3321874, at *7 (N.D.N.Y. July 24, 2019), courts in the Second Circuit have found that "exceptional circumstances exist for declining jurisdiction under § 1367(c)(4) where the claims in federal court are duplicative of claims already asserted in parallel state court proceedings." *Bentivegna*,

2016 WL 3460374, at *8 (E.D.N.Y. June 21, 2016) (quoting *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 498 Fed.App'x. 98, 103 (2d Cir. 2012) (Summary Order)); *Kleiman v. O'Neill*, No. 03-CV-3829, 2008 WL 5582453, at *3 (E.D.N.Y. Dec. 30, 2008); *Donohue v. Mangano*, 886 F. Supp. 2d 126, 149 (E.D.N.Y. 2012) (collecting cases); *see also Chompupong*, 2019 WL 3321874, at *8 (noting that "a finding [in favor] of exceptional circumstances is . . . that [Defendant] is not the cause of the parallel proceedings.").

Courts in the Second Circuit have defined a "parallel state court proceeding" as one where "the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Abe v. N.Y.U.*, No. 14-CV-9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)) (discussing parallel proceedings in the *Colorado River* context). Nevertheless, "[p]erfect symmetry of parties and issues is not required." *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013). Indeed, courts have found even where the parties are different, declining supplemental jurisdiction is proper where the state law claim at issue in federal court substantially overlaps with a state law claim in another forum. *See Kleiman*, 2008 WL 5582453, at *3 (declining to exercise supplemental jurisdiction where the state law claims at issue were identical to criminal matters being investigated in a different forum); *Philip Morris Inc. v. Heinrich*, No. 95-CIV-328, 1998 WL 122714, at *2 (S.D.N.Y. Mar. 19, 1998) (declining to exercise supplemental jurisdiction over a state law claim where the claim in federal court was identical to the state law claim in another forum, the proceedings in that forum were further along, and bringing those claims to federal court would not "avoid inconsistent results from identical or similar evidence.").

The first question is to determine whether Plaintiff's state court negligence claim and her federal negligence claim create an "exceptional circumstance" such that declining to exercise supplemental jurisdiction is proper in the present case. *See SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 459 (S.D.N.Y. 2003). In Plaintiff's cross-motion, she argues that her state law negligence claim is based on the fact that Ms. Martinez "did not engage in any evasive action." Resp. at 14. "Instead, she sat there for nearly three seconds" and "just plowed into a grove of trees at highway speeds, kill[ing] Robert Amrhein." *Id*. These claims, Defendant argues, are "the exact same negligence claims" Plaintiff brought in the New York Court of Claims. Dkt. No. 96 at 5, 7–8. In reply, Plaintiff avers her "arguments [in that court] rested solely on the claim that Martinez fell asleep at the wheel, not about what happened after she allegedly swerved to avoid a rodent," and the fact that "discovery [in this Court] was more through than in state court." Dkt. No. 101-1 at 10. Plaintiff's argument is unconvincing.

The record shows that Ms. Spiezio filed a motion for summary judgment with the New York Court of Claims on June 21, 2023 against the State of New York. Dkt. No. 97-3. In it, she sought summary judgment on the issue of causation and liability regarding Mr. Amrhein's death, explaining that he "died a horrific, painful and avoidable death on June 9, 2020, and the responsibility for the death lies squarely with the State of New York." *Id*. ¶¶ 1–15. She goes on to say that "Darlene Martinez, while acting as an employee of the State of New York and while driving a state-owned vehicle, lost control of that vehicle, drove that vehicle off of the road and killed Robert Amrhein." *Id.* ¶ 5. The Court of Claims denied Plaintiff's summary judgment motion because, inter alia, it found Plaintiff's theory that "Ms. Martinez fell asleep while driving the van" was "nondispositive" because "[w]hat occurred prior to the scenes captured by videos, and the events recorded by the [van's emergency data recorder], remains a disputed factual issue

and may have been the result of an emergency from which Ms. Martinez and the van could not recover." Court of Claims Order at 6. In light of the Court of Claims decision, Plaintiff "request[ed] an immediate trial date before the New York Court of Claims" with a scheduling conference date of July 11, 2025. Dkt. No. 101 at 2.

While the Defendants in the Court of Claims case and the instant federal action are different, Plaintiff's negligence theory in the Court of Claims, and the evidence she relies on, appear almost identical to the instant federal action. *Compare* Dkt. No. 97-3 *with* Am. Compl.; *see also* Dkt. Nos. 84, 85. In both cases, Plaintiff's core claim is that by unreasonably leaving the road and failing to take evasive action, Ms. Martinez caused the death caused the death of Mr. Amrhein. *Compare* Resp. at 14–15 *with* Dkt. No. 97-3 ¶¶ 2–5. In both cases, Plaintiff offers the expert opinion of Mr. Silver, as well as nearly the same factual background. *Compare* Dkt. No. 97-3 ¶¶ 8–22 *with* Am. Compl. ¶¶ 6–31; Resp. 1–4. Plaintiff cannot meaningfully distinguish between these cases by arguing the instant action is "about what happened after [Ms. Martinez] allegedly swerved to avoid a rodent," when her claim in both courts is ultimately about assigning liability for Mr. Amrhein's death. *Compare* Dkt. No. 101-1 at 10 *with* Dkt. No. 97-3 ¶¶ 3, 8–15. Moreover, her contention that the instant motion is "based on the additional facts developed in this case," as opposed to the state court case is dubious at best; as mentioned above, the factual record is largely consistent. *See id*. Thus, given the parallel nature of the proceedings, and Plaintiff's desire to continue litigating this claim in state court, the Court finds dismissing Plaintiff's state law claim is proper under Section 1367(c)(4).

The next question in the Court's analysis is "whether declining jurisdiction will accommodate the values of economy, convenience, fairness, and comity." *Bentivegna*, 2016 WL 3460374, at *8 (internal quotations omitted). When evaluating economy, "[c]ourts consider their

familiarity with the facts, the timing of the case, the number of parties and claims, the amount of

discovery, and whether there is ongoing parallel litigation." *Chenensky v. New York Life Ins. Co.*,

942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (citation omitted). "In weighing convenience, courts

ask whether the case is easily resolvable, and, if it is, whether it is more appropriate to resolve

the case than decline to exercise jurisdiction." *Id.* (citation omitted). "Fairness involves questions

of equity: Will declining jurisdiction prejudice the parties, and are the parties responsible for any

such prejudice?" *Id.* (citing *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994)). "Comity 'tak[es]

into account such factors as . . . the nature of the state law claims, the character of the governing

state law, and the relationship between the state and federal claims.'" *Id.* (quoting *City of

Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)) (alteration in original). The Court

is certain that declining supplemental jurisdiction in the instant action preserves these values.

Judicial economy weighs in favor of declining supplemental jurisdiction. As mentioned

above, Plaintiff is committed to litigating the substance of her negligence claim in state court.

Therefore, even though a federal jury might still hear all the same evidence regarding Plaintiff's

negligence claim when evaluating Plaintiff's right to bodily integrity claim, the jury need not

consider additional claims if another jury is already slated to hear similar evidence on a nearly

identical issue in state court, that may deliver inconsistent results. *See Philip Morris Inc.*, 1998

WL 122714, at *2 (S.D.N.Y. Mar. 19, 1998). Further, much of the evidence submitted before

this Court has already been reviewed by the New York Court of Claims and it would be

redundant for this Court to further entertain it.

Convenience weighs in favor of declining supplemental jurisdiction because, otherwise,

the parties will be forced to litigate the same negligence claim in two different fora with

potentially different results. If the Court dismisses the negligence claim here, it removes at least one duplicative issue from the parties' overall dispute between both courts.

Fairness weighs against granting supplemental jurisdiction. Plaintiff will not be unduly prejudiced by dismissing the state law negligence claim, since, again, the very same issue is being litigated in state court. *See* Dkt. Nos. 97-3, 97-5.

And finally, comity weighs in against granting supplemental jurisdiction. Plaintiff's case in the Court of Claims originated on August 26, 2020, more than a year before the instant case was filed. *Compare* Dkt. No. 97-3 ¶ 6 *with* Dkt. No. 1. That court is equally if not more capable of handling the Plaintiff's claim given that it is a state negligence claim in nature. Given the posture of Plaintiff's state court case as trial ready, and the nature of the state law claim, the Court finds comity would not be best served by exercising supplemental jurisdiction over Plaintiff's negligence claim. *See Chenensky*, 942 F. Supp. 2d at 395 ("State judges are the best arbiters of state law and comity weighs in favor of state decisions being interpreted by state judges, especially when, as here, parallel proceedings in state and federal court could lead to disparate results in each venue."); *Dedon GmbH v. Janus et Cie*, No. 10-CIV-4541, 2010 WL 4227309, at *9 (S.D.N.Y. Oct. 19, 2010), *aff'd*, 411 Fed.App'x. 361 (2d Cir. 2011) ("Comity is an 'important and omnipresent factor' in parallel litigation.") (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 160 (3d Cir. 2001)).

Accordingly, because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law negligence claim, Plaintiff's cross-motion for summary judgment on that claim is denied as moot and the claim is dismissed without prejudice.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion, Dkt. No. 73, is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED**, that Plaintiff's cross-motion for summary judgment on Plaintiff's state law claim, Dkt. No. 83, is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's state law negligence claim, Dkt. No. 25, is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      September 30, 2025
            Albany, New York

LAWRENCE E. KAHN
United States District Judge